884 F.2d 1387
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Thomas G. DESHIELDS, Plaintiff-Appellant,
v.
BALTIMORE CITY FIRE DEPARTMENT, Defendant-Appellee,
Mayor and City Council of Baltimore, Civil Service
Commission of Baltimore City, Defendants-Appellees.
 No. 88-3152.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 6, 1989.
Decided Aug. 24, 1989.
 
 Norris C. Ramsey, P.A. on brief for appellant.
 Neal M. Janey, City Solicitor, John S. Wood, Chief Solicitor, Eileen A. Carpenter, Special Solicitor, on brief for appellees.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 On May 8, 1984, Thomas G. DeShields filed this action pursuant to Title VII of the Civil Rights Act of 1964. See 42 U.S.C. Secs. 2000e et seq. Plaintiff, a black captain in the Baltimore City Fire Department, alleges that certain facets of the promotions process used by the city in promoting captains to battalion chiefs has had an adverse impact on blacks. See Dothard v. Rawlinson, 433 U.S. 321, 328-31 (1977). The district court referred the action to a magistrate acting as a special master, see 42 U.S.C. Sec. 2000e-5(f)(5), and on March 23, 1988, the magistrate found that plaintiff failed to establish a prima facie case of discrimination. On July 12, 1988, the district court overruled plaintiff's exceptions to the magistrate's report and recommendation and adopted it. We affirm.
 
 
 2
 There are presently twenty-nine battalion chief positions in the Baltimore City Fire Department and vacancies are filled by promotion from the rank of captain. Since 1973, promotions have been based on several factors: a written multiple choice examination; a seniority adjustment; and, at times, an efficiency rating. In 1982, only the examination and seniority factors were used. An individual was placed on an eligibility list if his score exceeded a minimum passing number. Adjustments for seniority were made and promotions were based on a strict rank order as required by union agreement.
 
 
 3
 Plaintiff joined the Baltimore City Fire Department in March of 1955; he has served as a fire fighter, pump operator, lieutenant, and was promoted to the rank of captain in April of 1972. Plaintiff has taken the battalion chief promotion examination each time it has been offered, and, each time his name has appeared on the eligibility list. In 1982, he was eighteenth and the highest ranking black on the list. Only six captains were made battalion chiefs in 1982; plaintiff was therefore not chosen for promotion.
 
 
 4
 Plaintiff asserts that the 1982 promotion examination and the method of rank ordering applicants for purposes of promotion have had an adverse impact on all blacks, including himself. The magistrate found, however, that plaintiff failed to establish a prima facie case of adverse impact, specifically challenging the probative force of plaintiff's statistical data. See generally Wards Cove Packing Co. v. Atonio, 109 S.Ct. 2115, 2121-24 (1989); Hazelwood School Dist. v. United States, 433 U.S. 299, 307-09 (1977). The magistrate's findings, as those of a special master, are subject to a clearly erroneous standard of review. See Fed.R.Civ.P. 53(e)(2). See also Brown v. Wesley's Quaker Maid, Inc., 771 F.2d 952, 954-56 (6th Cir.1985).
 
 
 5
 Plaintiff argued, for example, that defendants' rank ordering procedure had an adverse impact on blacks because it violated the Equal Employment Opportunity Commission (EEOC) guideline known as the "four-fifths rule." Here, the four-fifths rule involves a comparison of the percentage of blacks promoted with the percentage of whites promoted. According to the EEOC, adverse impact may generally be inferred if the ratio falls below 4/5--i.e., 80 percent. See 29 C.F.R. Sec. 1607.4D (1988). In this case, the magistrate calculated the ratio of black to white promotions to be 65.8 percent. The four-fifths rule merely represents, however, a numerical proxy with little independent statistical significance. A rule of thumb used by a federal agency is not binding as a rule of law upon a federal court. We agree with the magistrate that a violation of the rule does not alone establish a prima facie case of discrimination under Title VII. We also agree with the magistrate that the sample upon which the plaintiff's four-fifths rule calculations were based was too small to be statistically reliable. A change in the race of only a few of those promoted could make a significant mathematical difference in the outcome of the four-fifths rule calculations. See 29 C.F.R. Sec. 1607.4D (1988).
 
 
 6
 The magistrate also found that plaintiff failed to establish a prima facie case of discrimination based on a statistical analysis of the 1982 promotion examinations. Although plaintiff's expert testified that there were substantial disparities between the test scores of blacks and whites, the magistrate agreed with defendants' expert that the data relied upon by plaintiff's expert was insufficient to draw reliable statistical conclusions. According to defendants' expert, too few blacks and whites took the 1982 examination to allow for rigorous statistical analysis of the data. As the district court recognized, the magistrate was in the best position to assess the qualifications and credibility of the witnesses, and the magistrate's decision to credit the testimony of defendants' expert is not clearly erroneous.
 
 
 7
 We affirm the judgment for the reasons stated in the magistrate's report and recommendation, see DeShields v. Mayor & City of Baltimore, No. B-84-1905 (D.Md. Mar. 23, 1988) (Magistrate's Report and Recommendation), as adopted by the district court.
 
 
 8
 AFFIRMED.